UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SILS BROKERAGE CORP., :
:
              Plaintiff, : **MEMORANDUM AND ORDER**
: 10-CV-5176 (DLI)(RLM)
            -against- :
:
U.S. UNDERWRITERS INSURANCE COMPANY,:
:
             Defendant. :
----------------------------------------------------------------x
U.S. UNDERWRITERS INSURANCE COMPANY,:
:
             Third-Party Plaintiff, :
:
            -against- :
:
PETER LEWIARZ a/k/a PIOTR LEWIARZ :
a/k/a PETER LAWIARZ and :
BARBARA LEWIARZ :
:
             Third-Party Defendants. :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff Sils Brokerage Corp. ("Sils") brings this action against U.S. Underwriters Insurance Company ("U.S. Underwriters") seeking damages for an alleged breach of contract and a declaratory judgment that U.S. Underwriters had an obligation to defend Sils in an underlying state court insurance broker malpractice action. Defendant filed a motion for summary judgment seeking a declaration that it has no duty to defend, reimburse costs, or indemnify Sils, third-party defendants Peter Lewiarz ("Lewiarz") and Barbara Lewiarz, or any other party.

      For the reasons set forth below, U.S. Underwriters' motion for summary judgment is denied.

1

# BACKGROUND

## I.  Procedural History

Sils initiated the instant action in New York State Supreme Court, Queens County. On November 9, 2010, U.S. Underwriters removed the action to this Court, (Decl. of Steven Verveniotis ("Verveniotis Decl."), Ex. C at 1, Doc. No. 45-4.). On November 16, 2010, U.S. Underwriters filed its Answer. (Verveniotis Decl., Ex. D, Doc. No. 45-5.) On January 19, 2011, U.S. Underwriters filed a Third-Party Complaint against Peter and Barbara Lewiarz. (Verveniotis Decl., Ex. E, Doc. No. 45-6.) On April 8, 2011, Lewiarz answered the Third-Party Complaint. (Verveniotis Decl., Ex. F, Doc. No. 45-7.)

U.S. Underwriters moved for summary judgment. (*See* Notice of Motion for Summary Judgment, Doc. No. 44; Motion for Summary Judgment, Doc. No. 45; Mem. in Support, Doc. No. 46.) Sils opposed the motion for summary judgment. (*See* Decl. in Opp., Doc. No. 47; Mem. in Opp., Doc. No. 48; Rule 56.1 Statement, Doc. No. 49.) On January 13, 2012, U.S. Underwriters submitted reply papers in support of the motion for summary judgment. (*See* Reply in Support, Doc. No. 52.) Lewiarz, the third-party defendant, did not submit papers in response to the motion for summary judgment.

## II.  Factual Background

This case arises out of a claim made by Sils pursuant to an errors and omissions insurance policy based on the allegations asserted against it in *Lewiarz, et al. v. Travco Insurance Co., et al.*, No. 15-08, pending in New York State Supreme Court, Schoharie County (the "Underlying Action"). The Underlying Action was initiated by Lewiarz based on a denial of coverage for the losses to his property that were sustained in a fire in 2006. (Verveniotis Decl., Ex. G at 5, Doc. No. 45-8.)

In 2001, a property located in Schoharie County, owned by Lewiarz, was destroyed by a fire. (Jacob Rabinowitz Decl. ("Rabinowitz Decl."), Ex. A at 2, Doc. No. 48-1.) The property was insured by Travelers Insurance Co. ("Travelers") and the insurance company paid out approximately $800,000 on the claim. (Rabinowitz Decl., Ex. B at 88:13, Doc. No. 48-2.) Subsequent to this incident and payout of this first claim, Travelers issued a notice of non-renewal of insurance to Lewiarz based on his loss history. (Verveniotis Decl., Ex. U at 1, Doc. No. 45-22.)

In 2001 or 2002, Lewiarz began rebuilding a home at the site of the fire. (Rabinowitz Decl., Ex. B at 81:8-17.) During the initial building phase, Lewiarz sought homeowners' insurance for the property, but due to his loss history was unsuccessful. (*Id.* at 86:7-12.) Lewiarz then called Karen Kenney ("Kenney") seeking coverage. (*Id.*)

Through 2003, Kenney maintained a work space at the offices of the Dolores Buonocore Agency ("Buonocore Agency") in exchange for clerical/office work that she performed for the owner, Dolores Buonocore. (Verveniotis Decl., Ex. K at 8:2-6, Doc. No. 45-12.) One of her clerical duties included taking information from certain clients to procure insurance through an insurance agent. (*Id.* at 14:2-6.) Dolores Buonocore, in addition to being a real estate agent, was a licensed insurance agent in the State of New York. (Verveniotis Decl., Ex. J at 7:6-8, Doc. No. 45-11.) Kenney was not a licensed insurance broker. (Verveniotis Decl., Ex. K at 8:19-21.) Dolores Buonocore had instructed Kenney to take the information from the clients and contact an agency that would try to get a quote for the client. (Verveniotis Decl., Ex. J at 20:13 – 21:13.) Lewiarz had previously obtained commercial insurance through the Buonocore Agency. (*Id.* at 29:8-10.)

When Lewiarz sought insurance from Kenney, she took some basic information from him and then faxed that information to Sils. (Verveniotis Decl., Ex. K at 31:2-13.) A Sils employee then entered that information into its computer system and, based on the information provided, offered a quoted price for an insurance premium to Lewiarz through Kenney. No one at Sils or Travelers spoke with Lewiarz regarding the new insurance policy. Lewiarz accepted the quote, a binder was issued, and the premium was paid. (*Id.* at 34:19 – 35:5.)

Then, in 2006, Lewiarz's new property sustained damage from a fire. Lewiarz submitted a claim to Travelers. (Rabinowitz Decl., Ex. A at 2.) Travelers denied the claim alleging that there were material misrepresentations in the application for insurance that made the policy void ab initio. (Rabinowitz Decl., Ex. U at 1, Doc. No. 48-21.) Lewiarz then initiated the Underlying Action to recover damages against Travelers, Kenney, and Sils for the mishandling of his insurance application. (Rabinowitz Decl., Ex. G, Doc. No. 48-7.)

In response to the Underlying Action, Sils notified U.S. Underwriters of the complaint that had been filed. (Rabinowitz Decl., Ex. H at 1.) Sils had an errors and omissions insurance policy with U.S. Underwriters to cover certain actions in connection with the issuance of insurance. (*Id.*) U.S. Underwriters initially hired counsel to represent Sils in the Underlying Action. (*Id.* at 2.) Sils was notified of this representation by a letter from U.S. Underwriters that included a reservation of rights. (*Id.*) As the case proceeded, defense counsel for Sils informed U.S. Underwriters that Kenney was not a Sils employee at the time that Lewiarz procured insurance from her. (Aff. of Matthew Rubin ("Rubin Aff.") ¶ 9, Doc. No. 45-24.) Kenney did not become a Sils employee until January 2004. (Verveniotis Decl., Ex. K at 25:7-10.) U.S. Underwriters sent another letter to Sils on July 24, 2009, informing Sils that it believed that the insurance policy excluded coverage for wholesale brokers and that since Kenney was employed

4

by Buonocore Agency, not Sils, and Sils obtained the insurance for the Buonocore Agency, the transaction involved a wholesale broker. (Rabinowitz Decl., Ex. F at 1, Doc. No. 48-6.) However, in the July 2009 letter, U.S. Underwriters also indicated that it would continue to provide a defense for Sils through "the rendering of a decision regarding this dismissal motion" that retained counsel was drafting. (*Id.* at 2.) This letter again contained a reservation of rights. (*Id.* at 3.) The state court denied Sils' motion to dismiss. (Rabinowitz Decl., Ex. O at 1, Doc. No. 48-15.) The New York State Supreme Court, Appellate Division, Third Department ("Appellate Division") affirmed this decision on March 24, 2011. (Rabinowitz Decl., Ex. A.) The Appellate Division reversed the portion of the decision that denied the motion to dismiss against Kenney. (Rabinowitz Decl., Ex. A at 7.) On January 20, 2010, U.S. Underwriters notified Sils that it would no longer defend Sils in the action, since a decision had been rendered on the motion to dismiss in the Underlying Action. (Rabinowitz Decl., Ex. O.) U.S. Underwriters suggested that Sils obtain independent counsel, for whom Sils would be responsible to pay. (*Id.* at 2.)

Sils was covered by insurance policies issued by U.S. Underwriters since at least February 28, 2004. (Rubin Aff. ¶ 22.) Sils had several policies over a period of ten years with U.S. Underwriters, and while the parties do not agree on which policies govern the claim Sils made based on the Underlying Action, policy IAE3010167D was effective from March 5, 2008 through March 5, 2009. (Rubin Aff., Ex. F, Doc. No. 45-30.) The policy states:

> IV. EXCLUSIONS
>
> This Policy does not apply to, and the **Company** will not defend or pay **Loss** for, any **Claim** arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged: . . . .

(*Id.* at 2 of 5.)[1]  This policy included an endorsement that listed an additional exclusion for the policy.  The exclusion stated:

> WHOLESALER EXCLUSION
>
> It is agreed that IAJ (10/96) INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY INSURANCE POLICY is amended as follows:
>
> Section IV. EXCLUSIONS is amended by the addition of the following:
>
> N.     placement of and/ or failure to place a risk or an insurance or reinsurance contract, policy or other risk transfer mechanism, device or funding vehicle on behalf of any other insurance agent or broker who is not an **Insured**.

(*Id.* at Wholesaler Exclusion, 1 of 1.)

## **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995)

---

[1]  Capitalized and bold print terms in the policy indicate defined terms within the policy.  (*Id.* at 1 of 5.)

(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

**DISCUSSION**

The duty to defend is broader than the duty to indemnify under New York law. *Silverman Neu, LLP v. Admiral Ins. Co.*, 2013 WL 1248629, at *7 (E.D.N.Y. Mar. 28, 2013) (citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). The obligation to defend the insured is triggered whenever there is a reasonable possibility that the allegations in the complaint will lead to coverage. *Silverman*, 2013 WL 1248629, at *7. While the duty to defend is broad, there is an exception. *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger LLP v. Underwriter at Lloyd's, London*, 918 F. Supp. 2d 114, 120 (E.D.N.Y. 2013). This expansive duty can be overcome if the insurer can establish that there is no possible legal or factual basis that might lead to coverage. *Id.*

In order to establish that the insurer can be relieved from the duty to defend based on a policy exclusion, the insurer bears the heavy burden of demonstrating that: (i) the allegations in the complaint are solely within the exclusion, (ii) the exclusion is subject to no other reasonable interpretation, and (iii) there is no basis upon which the insurer will ultimately be held obligated to indemnify the insured. *Silverman*, 2013 WL 1248629, at *7.

In reviewing an insurance contract under New York law, a court applies the ordinary rules of contract interpretation. *Id.* at *8. Generally, courts refer to the language of the contract to determine whether it is unambiguous, construing the words using common speech. *Am. Automobile Ins. Co. v. Sec. Income Planners & Co., LLC*, 847 F. Supp. 2d 454, 461 (E.D.N.Y. 2012). Specifically, "[i]nsurance contracts must be interpreted 'according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract.'" *Silverman*, 2013 WL 1248629, at *8 (quoting *GMAC v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005)). Additionally, to the extent that there are ambiguous terms, they are to

be construed against the insurer. *Am. Automobile Ins. Co.*, 847 F. Supp. 2d at 461. Courts also look to the allegations in the underlying complaint to determine if an insurer has a duty to defend. *First Invs. Corp. v. Liberty Mutual Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998) ("[A] court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." (quotation omitted)).

It is not necessary for purposes of deciding this summary judgment motion for the Court to determine whether the claims fall within the scope of the policy since the parties have not contested this issue. However, U.S. Underwriters contends that this type of transaction is excluded from the policy.

**Policy Exclusion**

The policy itself contains several exclusions of coverage, as well as exclusions that were added to the policy through various endorsements. The parties' contentions relate solely to the wholesaler exclusion. Therefore, the Court only addresses the wholesaler exclusion in this decision.

The wholesaler exclusion precludes any coverage related to the "placement of . . . an insurance . . . policy . . . on behalf of any other insurance agent or broker who is not an **Insured**." (Rubin Aff., Ex. F.) As noted by Sils, the term "wholesale broker" is not defined by the policy.[2] However, that term is not used in the language of the exclusion; rather, it more plainly states that

---

[2] The Court notes that Dolores Buonocore, Margaret Lamonaca, a Sils employee, and Fred Sauberman, a principal of Sils, each declared by affidavit that "Sils would, on occasion, act as a wholesale broker for Dolores Buonocore Real Estate Agency." (Rubin Aff., Ex. L ¶ 4, Doc. No. 45-36; Rubin Aff., Ex. K ¶ 4, Doc. No. 45-35; Rubin Aff., Ex. J ¶ 4, Doc. No. 45-34 (stating "I would submit the information provided by potential customers to various other insurance agencies in the New York Metropolitan area, including Sils Brokerage Corp., who would act as wholesale brokers").)

insurance obtained on behalf of any other agent or broker that is not a listed insured party is not covered. The policy defines "Insured" as:

> (1) the **Named Insured** stated in the Declarations;
> (2) any past, present or future principal, partner, officer, director, stockholder, trustee or **Employee** of the **Named Insured** while acting within the scope of their duties as such;
> (3) any solicitor sub-agent, sub-broker or independent contractor of the **Named Insured** but only as respects insurance placed through the facilities of the **Named Insured**; and
> (4) in the event of death, incompetency, insolvency or bankruptcy of any **Insured**, such **Insured's** legal representative whole acting within the scope of his or her duties as such.

(*Id.*)

The first and fourth subsections in the definition are not applicable in this case. There is evidence in the record that neither Kenney nor Dolores Buonocore were employees, or any other type of related individual listed in subsection two, at the time of the transaction with Lewiarz. (Rubin Aff., Ex. L ¶ 8; *see generally* Rubin Aff., Ex. J.) However, neither party has addressed or pointed to any evidence in the record regarding whether Kenney or Dolores Buonocore were acting as a "solicitor sub-agent, sub-broker or independent contractor" of Sils. The Court notes that the state court determined that there was an issue of fact regarding whether Kenney was acting as an agent of Sils.[3] (Rabinowitz Decl., Ex. A at 5 (noting that Lewiarz's affidavit claiming he called Kenney at Sils' office created "a classic question of credibility – to be resolved by a trier of fact – as to whether Kenney was employed by Sils or, at the very least, whether a principal-agent relationship existed between Kenney and Sils at the time the insurance policy was procured, such that Sils may be vicariously liable for Kenney's action").) Without a

---

[3] The Court also notes that Sils misstates the record in its opposition papers. (*See* Pls.' Opp. Mem. at 9, 19 (stating "Sils Brokerage, by its earlier application for leave of this court to move for a stay pending resolution of the state court proceeding . . ." and "[t]his court has chosen in its sound discretion to exercise jurisdiction rather than stay the instant action pending determination of disputed factual issues in the state litigation").) The Court, in fact, granted Sils leave to file a motion to stay the proceeding pending an outcome of the state court action; however, *Sils* did not file such a motion.

sufficient record on this issue, the Court is constrained to deny U.S. Underwriters' motion for summary judgment as a genuine issue of material fact exists.

## **CONCLUSION**

For the reasons set forth above, the motion for summary judgment is denied. There is a genuine issue of material fact regarding whether Kenney was acting as a sub-agent, sub-broker, or independent contractor for Sils at the time that the Lewiarz transaction took place.

SO ORDERED.

DATED:  Brooklyn, New York
        March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge